UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANDRO LEONEL GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER GUZMAN,<br>CORRECTIONAL OFFICER RODRIN,<br><br>Defendants. | Case No.: 17-cv-241-GPC-BGS<br><br>**ORDER GRANTING DEFENDANT RODRIN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Dkt. No. 21] |

Presently before the Court is Defendant Correctional Officer Rodrin's Motion to Dismiss Plaintiff Leandro Leonel Gonzalez's First Amended Complaint. Dkt. No. 21. Plaintiff filed an opposition on September 25, 2017. Dkt. No. 27. Defendant Rodrin filed a reply on November 3, 2017. Dkt. No. 31.

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.

For the reasons set forth below, the Court will **GRANT** Defendant Rodrin's motion to dismiss with leave to amend.

## I. BACKGROUND

On February 8, 2017, Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that Correctional Officers Guzman and Rodrin had violated his Eighth Amendment rights while he was incarcerated at the Richard J. Donovan Correctional Facility. Dkt. No. 1 at 16-18. On April 18, 2017, the Court granted Plaintiff's motion to proceed in forma pauperis. Dkt. No. 4. On August 1, 2017, the Court granted Plaintiff's motion for leave to file an amended complaint to substitute the correct name for Correctional Officer Guzman. Dkt. No. 15. On August 16, 2017, Plaintiff filed his First Amended Complaint ("FAC"). Dkt. No. 18. Defendant Rodrin filed his motion to dismiss on September 5, 2017. Dkt. No. 21.

On April 6, 2015, Plaintiff was incarcerated at the Richard J. Donovan Correctional Facility and housed in cell 201 in that facility. FAC ¶ 2. Plaintiff's cell door allegedly malfunctioned such that when the officer attempted to open the door, it would only open 5-6 inches. FAC ¶ 3. As a result, plaintiff or his cellmate Juan Rocha, would get up and place their hands in the "little space" between the door and the cell to pull the door open. *Id.* ¶¶ 4-5. At approximately 7:20 AM, Correctional Officer Guzman opened the door about 5-6 inches, and plaintiff inserted his hand into the "little space" with the intention to pull the door open as he had previously done when prior correctional officers had attempted to open the cell door. *Id.* ¶¶ 4, 9. Plaintiff alleges that Defendant Guzman closed the door on Plaintiff's right hand "malicious[ly] and sadistic[ally]", and that he failed to respond despite Plaintiff's repeated requests to "open the door." *Id.* ¶¶ 9-11. After Plaintiff made this request a "couple of times," Defendant Guzman opened the door. *Id.* ¶ 11. Plaintiff alleges that his fingers were deeply cut and that he had mobility issues in his right hand and arm. *Id.* ¶ 12. Plaintiff's cellmate Juan Rocha observed that Plaintiff's "fingers in his right hand" had "deep cuts." FAC, Ex. 25. Another inmate stated that Plaintiff had "deep cuts on His fingers" and that plaintiff had issues with physical activity using his arms after

the incident. FAC, Ex. 26.

Plaintiff called a porter and asked him to explain to Correctional Officer Rodrin that he had a medical emergency. *Id.* ¶ 20. According to Plaintiff "Defendant Rodrin did not [give] importance to Plaintiff's request for medical attention." *Id.*

Plaintiff subsequently showed Defendant Rodrin the cuts on his fingers, which were still bleeding, and requested immediate health care services, which Rodrin denied. *Id.* ¶ 24. After Rodrin denied immediate health care services, Plaintiff submitted on that same day a Health Care Services Request Form describing his health issues. *Id.* ¶ 33. Plaintiff was seen by Registered Nurse Calderon the next day. *Id.* ¶¶ 21-24; 45. Plaintiff claims to have exhausted all available administrative remedies at the Department of Corrections and Rehabilitation in California, pointing to a series of appeals regarding this issue that began on April 6, 2015 and ended with a Third Level Appeal Decision denying his appeal on November 3, 2016. *Id.* ¶¶ 35-85.[1]

Plaintiff alleges two causes of action under 42 U.S.C. § 1983. First, Plaintiff alleges that Defendant Guzman violated the Eighth Amendment's prohibition against cruel and unusual punishment through his battery against Plaintiff and through his failure to reasonably respond. *Id.* ¶ 88. Second, Plaintiff alleges that Defendant Rodrin violated the Eighth Amendment's prohibition against cruel and unusual punishment by failing to provide immediate health care services to Plaintiff. *Id.* ¶ 99. This instant motion is brought solely on behalf of Defendant Rodrin as to the second cause of action.[2]

---

[1] Defendant Rodrin does not appear to challenge whether Plaintiff exhausted all available administrative remedies.

[2] Defendant Rodrin asserts that Defendant Guzman had not been served with process as of the filing of the motion to dismiss. MTD at 2 n.1. Defendant Guzman was subsequently served on October 13, 2017. Dkt. No. 28. Plaintiff requested an entry of default against Correctional Officer Guzman on October 16, 2017, but the clerk of court did not enter default as a waiver of summons was signed on October 11, 2017 and filed on October 13, 2017. *See* Dkt. No. 30. On November 13, 2017, Defendant DeGuzman—who was erroneously sued as Correctional Officer Guzman—filed a motion seeking to join

## II. LEGAL STANDARD

### a. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D.

---

Defendant Rodrin's motion to dismiss. Dkt. No. 32. Because this late filing did not adequately provide plaintiff with time to respond to DeGuzman's joinder and because the Court will grant Plaintiff leave to amend, the Court **DENIES AS MOOT** Defendant DeGuzman's Joinder in this motion to dismiss.

629, 634 (S.D. Cal. 1998).

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). Pro se litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). In giving liberal interpretation to a pro se complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 21 ("MTD").

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t]" to a prisoner's "serious medical needs." *Peralda v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. The Ninth Circuit has stated that deliberate indifference is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

A determination of "deliberate indifference" involves an examination of two

elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

### a. "Serious Medical Need"

Society does not expect that prisoners have "unqualified access to healthcare" and consequently deliberate indifference to medical needs is an Eighth Amendment violation only if those needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *See id.* at 1060-61 (citations omitted).

Defendant Rodrin asserts that minor cuts, bruising, and swelling do not rise to the level of a serious medical need. Defendant contends that plaintiff's injuries are so minor that they do not implicate constitutional concerns for any alleged delay in medical treatment. MTD at 5. Plaintiff responds that his injuries were more serious, alleging that he suffered "deep cuts, terrible pain and problems in the mobility of his right hand and arm, serious damages in his bones and nerves." Opp. at 7.

The Court finds that Plaintiff's injuries do not rise to the level of a *serious* medical need required to show a constitutional violation of the Eighth Amendment. Courts may look at the medical records attached to the complaint to determine whether a plaintiff had a serious medical need. *See Edwards v. California State Prison Los Angeles County*, No. CV-09-2584 GAF AN, 2012 WL 3023317, at *11 (C.D. Cal. July 23, 2012) ("Further, Plaintiff's own medical records, which are attached as Exhibits B and C to the complaint,

6

establish [Nurse] Daniel was not deliberately indifferent to a serious medical need."). Similar to *Edwards*, here Plaintiff's medical records establish that Plaintiff's injuries did not arise to the level of a "serious medical need." Nurse Calderon, who inspected Gonzalez the morning after the incident, wrote that Gonzalez was "able to make a fist" with the injured hand. FAC, Ex. 20.[3] Further, she observed that there was no "swelling," "bruising," "discoloration," or "gross deformity." *Id.* She noted that plaintiff suffered a small laceration to the "2nd, 3rd, 4th digits" that was only "1/2 cm" in length. *Id.* Furthermore, the nurse observed that Plaintiff's circulation, sensation, and motion (CSM)[4] were "WNL" (within normal limits). FAC, Ex. 20. In addition, Plaintiff's supporting declarations from plaintiff's cellmate Rocha and another inmate Silva state only that they saw deep cuts on plaintiff's right hand fingers. FAC, Exs. 56-59. *See also* FAC, Ex. 19 ("Officer Gusman working in the control clinch my right hand intentional cutting part of my fingers . . .").

Because Plaintiff's injuries appear to consist of cuts/lacerations approximately ½ cm in length, they do not rise to the level of a "serious medical need" sufficient to constitute a constitutional violation. *See MacFalling v. Nettleton*, No. CV1702399SVWAFM, 2017 WL 3498616, at *7 (C.D. Cal. Aug. 15, 2017) (cuts, abrasions, and swollen hands resulting

---

[3] The Court may consider the exhibits attached to the complaint in determining whether the plaintiff can prove any set of facts to support their claim. However, "[i]f a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991).

[4] The Court takes judicial notice of medical terms and acronyms such as CSM, WNL, and PCP, which are readily verifiable on online dictionaries (e.g., medilexicon.com). Dictionary definitions are a proper subject for judicial notice. *See Wayne v. Leal,* 2009 WL 2406299, at *4 (S.D. Cal. Aug.4, 2000) (noting that a court may take judicial notice of facts "that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, such as an almanac, dictionary, calendar, or other similar source"); FED. R. EVID. 201(b)-c(1) (noting that the court "may take judicial notice on its own.")

from overly tight handcuffs did not rise to level of a significant injury); *Edwards v. California State Prison Los Angeles County*, 2012 WL 3023317, *11 (C.D. Cal. July 23, 2012) ("Because Plaintiff's own medical records establish his cuts did not constitute a serious medical need or pose a significant threat to his health, Plaintiff's medical indifference claim against c/o Jerid and the other defendants is incurably defective."); *Telles v. Stanislaus Cty. Sheriff's Dep't*, No. 1:10-CV-01911 AWI, 2011 WL 2036962, at *5 (E.D. Cal. May 24, 2011) (cuts and bruises not serious medical need where plaintiff did not allege the severity of those injuries); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 60-61 (N.D.N.Y. 2009) (holding that black eyes, bruising, red spots, kick marks, and open lacerations did not constitute a serious medical need); *Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (allegations of minor cuts and lacerations were not sufficiently serious); *Dawes v. Coughlin*, 159 F.3d 1346, 1998 WL 513944, at *1 (2d Cir. 1998) (1.5″ laceration on elbow not sufficiently serious to support Eighth Amendment claim); *Davis v. Jones*, 936 F.2d 971, 972–73 (7th Cir. 1991) (one-inch laceration not serious medical need). Further, the fact that Nurse Calderon did not find Plaintiff's injuries worthy of any follow-up treatment and did not immediately refer Plaintiff to his PCP ("Primary Care Physician") weighs in favor of finding that his injuries were not a "serious medical need." *Cf. Bryant v. Thomas*, No. 09CV1334-WQH MDD, 2012 WL 5943654, at *8 (S.D. Cal. Sept. 7, 2012), *report and recommendation adopted*, No. 09CV1334 WQH-MDD, 2012 WL 5943547 (S.D. Cal. Nov. 27, 2012), *aff'd*, 669 F. App'x 476 (9th Cir. 2016) ("The existence of an injury that medical officials find worthy of treatment is sufficient to satisfy the objective component of the Eighth Amendment analysis.").

As such, Plaintiff fails to state a deliberate indifference claim because he has not alleged a serious medical need.

### b. "Deliberate Indifference"

While the Court's conclusion that plaintiff's claim fails to allege a "serious medical need" is enough to dismiss this claim, the Court also addresses the nature of Defendant's response to Plaintiff's medical need. Deliberate indifference may be manifest by the intentional denial, delay or interference with a plaintiff's medical care. *See Estelle*, 429 U.S. at 104–05. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Mere negligence in the provision of medical care does not constitute a constitutional violation. *Estelle*, 429 U.S. at 105-06. Courts have found that delay in providing treatment for minor injuries does not arise to the level of deliberate indifference sufficient to state an Eighth Amendment violation. *See Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) ("we find no merit in [Plaintiff's] claims stemming from alleged delays in administering his pain medication, in treating his broken nose, and in providing him with a replacement crutch."); *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (no claim for deliberate medical indifference can be made for mere delay of surgery unless denial of medical care was harmful).

When a prisoner alleges that delay of medical treatment constitutes deliberate indifference, the prisoner must show that the delay caused harm. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997). However, a finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary. *Id.*

Here, the Court concludes that Defendant Rodrin's behavior was at most negligent and does not amount to deliberate indifference. Rodrin allegedly denied Plaintiff's initial request for medical care shortly after the incident occurred. FAC ¶ 20. Plaintiff showed Defendant Rodrin his cuts and Rodrin allegedly once again denied immediate health care

services to Plaintiff. FAC ¶ 24. All told, any delay from Defendant Rodrin's inaction was at most negligent and cannot constitute deliberate indifference given that Plaintiff was seen by medical staff the next morning after he filled out a health services request form. *See Frost*, 152 F.3d at 1130; FAC ¶ 33; Ex. 20 (nurse inspection took place on April 7, 2015 at 8:00AM).[5]

Second, Plaintiff has not adequately alleged that any harm resulted from the delay in medical attention. Plaintiff has not alleged that any delay in obtaining medical treatment exacerbated his condition or worsened his injuries. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (finding no deliberate indifference where plaintiff failed to allege that minor delays caused harm); *Amason v. Wedell*, 2014 WL 2987695 (E.D. Cal. July 1, 2014) ("Plaintiff did not identify the harm, if any, he sustained from the delay between 6:50 p.m. on September 20, 2009, and 9:00 a.m. on September 21, 2009."); *Martinez v. Villalon*, No. EDCV131064DMGDFM, 2017 WL 4174405, at *17 (C.D. Cal. May 19, 2017*), report and recommendation adopted*, No. EDCV1301064DMGDFM, 2017 WL 4156993 (C.D. Cal. Sept. 19, 2017) ("Plaintiff has not pointed to any evidence showing that the delay in his obtaining medical treatment, which totaled at most only a few hours, exacerbated his condition or caused him further significant harm."). *See also Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that mere delay of medical treatment, without more, is insufficient to state a claim of medical deliberate indifference).

Accordingly, the Court will **GRANT** Defendant Rodrin's Motion to Dismiss with leave to amend.[6]

---

[5] Plaintiff alleges he was seen by Nurse Calderon 72 hours after the incident with Officer Guzman. Opp. at 3. However, Plaintiff's medical records contradict this assertion and indicate that a check-up with Nurse Calderon took place the day after the incident on the morning of April 7, 2015 around 8:00 AM. *See* FAC, Ex. 20.

[6] Defendant briefly argues in a single paragraph that the Eleventh Amendment bars Plaintiff's claim for damages. MTD at 7. Plaintiff's opposition included a single heading regarding this issue, but did not

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby **GRANTS** Defendant Rodrin's Motion to Dismiss Plaintiff's Second Cause of Action as to Defendant Rodrin. Accordingly, what currently remains in the FAC is Plaintiff's First Cause of Action against Defendant DeGuzman. The Court will allow Plaintiff leave to amend his claim against Defendant Rodrin. Accordingly, any **Second Amended Complaint** shall be filed by **Friday, December 15, 2017.**

The Court will also **DENY AS MOOT** Defendant DeGuzman's Motion for Joinder in Defendant's Rodrin's Motion to Dismiss (Dkt. No. 32).

**IT IS SO ORDERED**.

Dated: November 14, 2017

Hon. Gonzalo P. Curiel
United States District Judge

---

substantively address this argument. Opp. at 19. As the Court finds that Plaintiff has not sufficiently allegedly deliberate indifference to a serious medical need, the Court need not reach this issue.