UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANDRO LEONEL GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER DEGUZMAN, CORRECTIONAL OFFICER RODRIN, CORRECTIONAL NURSE O. CALDERON<br><br>Defendants. | Case No.: 17-cv-241-GPC-BGS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS:**<br><br>**(1) EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM AGAINST DEFENDANTS RODRIN AND CALDERON AND (2) CONSPIRACY CLAIM AGAINST ALL DEFENDANTS**<br><br>[Dkt. No. 36; Dkt. No. 44] |

Presently before the Court are Defendants' Motions to Dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Rodrin and Defendant Calderon, as well as Plaintiff's conspiracy claim as to all Defendants. Dkt. No. 36[1]; Dkt. No. 44. Plaintiff filed an opposition to Rodrin's Motion on January 23, 2018. Dkt. No.

---

[1] Defendant's Dkt. No. 36 Motion to Dismiss is brought on behalf of Defendant Rodrin as to the Deliberate Indifference Claim and on behalf of Rodrin and DeGuzman regarding the conspiracy claim. *See* Dkt. No. 36 at 2.

42. No reply was filed. Plaintiff filed an opposition to Calderon's Motion on March 23, 2018. Dkt. No. 48. No reply was filed. Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.

For the reasons set forth below, the Court will **GRANT** the Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Defendant Rodrin and Defendant Calderon, as well as Plaintiff's conspiracy claim as to all Defendants.

## I. BACKGROUND

On February 8, 2017, Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that Correctional Officers Guzman and Rodrin had violated his Eighth Amendment rights while he was incarcerated at the Richard J. Donovan Correctional Facility. Dkt. No. 1 at 16-18. On April 18, 2017, the Court granted Plaintiff's motion to proceed in forma pauperis. Dkt. No. 4. On August 1, 2017, the Court granted Plaintiff's motion for leave to file an amended complaint to substitute the correct name for Correctional Officer Guzman. Dkt. No. 15. On August 16, 2017, Plaintiff filed his First Amended Complaint ("FAC"). Dkt. No. 18. Defendant Rodrin filed his motion to dismiss on September 5, 2017. Dkt. No. 21. On November 14, 2017, this Court granted Defendant Rodrin's Motion to Dismiss the First Amended Complaint with Leave to Amend and denied as moot Defendant DeGuzman's joinder in the motion to dismiss with leave to amend. Dkt. No. 36. The Court dismissed the FAC for failure to state a claim for an Eighth Amendment deliberate indifference claim because plaintiff failed to allege a serious medical need and failed to allege deliberate indifference. *Id.* at 8. Plaintiff filed a Second Amended Complaint ("SAC") on December 8, 2017. Dkt. No. 34.

On April 6, 2015, Plaintiff was incarcerated at the Richard J. Donovan Correctional Facility and housed in cell 201 in that facility. SAC ¶ 13. Plaintiff's cell door allegedly malfunctioned such that when the officer attempted to open the door, it would only open 5-6 inches. *Id.* ¶ 14. As a result, plaintiff or his cellmate Juan Rocha, would get up and

2

17-cv-241-GPC-BGS

place their hands in the "little space" between the door and the cell to pull the door open. *Id.* ¶¶ 14-16. At approximately 7:20 AM, Correctional Officer DeGuzman opened the door about 5-6 inches, and plaintiff inserted his hand into the "little space" with the intention to pull the door open as he had previously done when prior correctional officers had attempted to open the cell door. *Id.* ¶¶ 20. Plaintiff alleges that Defendant DeGuzman closed the door on Plaintiff's right hand "malicious[ly] and sadistic[ally]", and that he failed to respond despite Plaintiff's repeated requests to "open the door." *Id.* ¶¶ 21. After Plaintiff made this request a "couple [of] times," Defendant DeGuzman opened the door. *Id.* ¶ 22. Plaintiff alleges that his fingers were deeply cut and that he had mobility issues in his right hand and arm. *Id.* ¶ 23. Plaintiff's cellmate Juan Rocha observed that Plaintiff's "fingers in his right hand" had "deep cuts." SAC ¶ 23; Ex. 25. Another inmate stated that Plaintiff had "deep cuts on His fingers" and that plaintiff had issues with physical activity using his arms after the incident. SAC, Ex. 26.

Plaintiff called a porter and asked him to explain to Correctional Officer Rodrin that he had a medical emergency. *Id.* ¶ 34. According to Plaintiff "defendant Rodrin did nothing to get care for Plaintiff. Plaintiff understood that defendant Rodrin joined to defendant M. DeGuzman in the conspiracy committed criminal and knowing unlawful acts against Plaintiff."

Plaintiff subsequently showed Defendant Rodrin the cuts on his fingers, which were still bleeding, and requested immediate health care services, which Rodrin denied. *Id.* ¶ 36. Rodrin denied Defendant's request for a third time shortly thereafter. *Id.* ¶ 37. Plaintiff submitted on that same day a Health Care Services Request Form describing his health issues. *Id.* ¶ 56. Plaintiff was seen by Registered Nurse Calderon the next day. *Id.* ¶¶ 58-62. Nurse Calderon provided Plaintiff naproxen and told him "it will heal." SAC ¶ 62. This led Plaintiff to believe that Nurse Calderon was "acting in concert with [the] other Defendants." Plaintiff now alleges that Nurse Calderon wrote a "false medical report" of this encounter. SAC ¶ 64.

Plaintiff alleges two causes of action under 42 U.S.C. § 1983. First, Plaintiff alleges that Defendant DeGuzman violated the Eighth Amendment's prohibition against cruel and unusual punishment through his battery against Plaintiff and through his failure to reasonably respond. *Id.* ¶¶ 78-90. Second, Plaintiff alleges that Defendants Rodrin and Calderon violated the Eighth Amendment's prohibition against cruel and unusual punishment by their denial, delay, and failure to provide medical care services to Plaintiff. *Id.* ¶ 92. Third, Plaintiff appears to allege a cause of action based on a conspiracy to violate his rights. SAC ¶¶ 5-8, 34, 63 [sic].

These instant motions are brought on behalf of Defendant Rodrin (Dkt. No. 36) and on behalf of Defendant Calderon (Dkt. No. 44) as to the Second Cause of Action[2] and as to Plaintiff's conspiracy claim.

## II. LEGAL STANDARD

### a. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[2] Defendant DeGuzman has not moved to dismiss the SAC as to the first cause of action. In Calderon's Motion, Defendants assert that *both* Rodrin and Deguzman had moved to dismiss the SAC. Dkt No. 44 at 3 (citing Dkt No. 36) ("Defendants Rodrin and DeGuzman moved to dismiss the Second Amended Complaint (ECF No. 36.) This motion is currently pending before the Court.") This Motion appears limited to only DeGuzman's role in the conspiracy claim. *See* Dkt. No. 36 (arguing only for the dismissal of Plaintiff's Eighth Amendment claim against Defendant Rodrin and Plaintiff's conspiracy claim); *see also* Dkt. No. 44 (arguing only for the dismissal of Plaintiff's Eighth Amendment claim against Defendant Calderon and Plaintiff's conspiracy claim). Accordingly, the Court does not consider at this time Plaintiff's Third Argument regarding the excessive force standard against Defendant DeGuzman. *See* Dkt. No. 42 at 22.

4

17-cv-241-GPC-BGS

*Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). Pro se litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). In giving liberal interpretation to a pro se complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast

in the form of factual allegations. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t]" to a prisoner's "serious medical needs." *Peralda v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. The Ninth Circuit has stated that deliberate indifference is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

### b. "Serious Medical Need"

Society does not expect that prisoners have "unqualified access to healthcare" and consequently deliberate indifference to medical needs is an Eighth Amendment violation only if those needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and

6

17-cv-241-GPC-BGS

substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *See id.* at 1060-61 (citations omitted).

Defendants once again assert that minor cuts, bruising, and swelling do not rise to the level of a serious medical need. Defendants contend that plaintiff's injuries are so minor that they do not implicate constitutional concerns for any alleged delay in medical treatment. Dkt. No. 36 at 4. Plaintiff argues his injuries were more serious and alleges that he suffered deep cuts, bleeding, problems in the mobility of his right hand and arm, as well as bone and nerve damage. *See, e.g.*, SAC ¶ 23.

Once again, the Court concludes that Plaintiff's injuries do not rise to the level of a serious medical need required to show a constitutional violation of the Eighth Amendment.

Pertinently, the Court must consider whether Plaintiff's medical records are appropriate to consider at this stage, particularly where Plaintiff now appears to allege, at least in part, that Nurse Calderon fabricated these records. *See* SAC ¶ 64 ("She only made a fabrication of a perpetrating lie making a false medical report . . .). The Court need not accept this factual allegation as true where this evidence has been contradicted by exhibits attached to the complaint. Most pertinently, Plaintiff relied on the medical report to substantiate his administrative appeal, checking a box stating that he attached supporting documents including the medical report, and did not make any attack on Nurse Calderon's report in the administrative appeal. SAC, Ex. 14.[3] The Court concludes that any allegation of fabrication of this medical record is contradicted by the use and inclusion of this medical record—without a claim of fabrication—in Plaintiff's administrative appeals. *See Cooper v. Yates*, No. 1:09-cv-85-AWI-MJS P, 2010 WL 4924748, *3 (E.D. Cal. Nov. 29 2010) ("The Court may, and does here, disregard factual allegations contradicted by facts

---

[3] The "7362" listed in the supporting documents section dated "4/6/15" is the CDC 7362 medical report supplied by Nurse Calderon. *See* SAC, Exs. 14, 20.

7

established by reference to exhibits attached to the complaint."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2011) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.). Moreover, the fabrication allegation contradicts the allegations in Plaintiff's prior complaint which at least tangentially relied on the authenticity of this exhibit and did not previously challenge its authenticity. *See* Dkt. No. 18 ¶ 33; *See also Azadpour v. Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'").

Courts may look at the medical records attached to the complaint to determine whether a plaintiff had a serious medical need. *See Edwards v. California State Prison Los Angeles County*, No. CV-09-2584 GAF AN, 2012 WL 3023317, at *11 (C.D. Cal. July 23, 2012) ("Further, Plaintiff's own medical records, which are attached as Exhibits B and C to the complaint, establish [Nurse] Daniel was not deliberately indifferent to a serious medical need."). Similar to *Edwards*, here Plaintiff's medical records continue to establish that Plaintiff's injuries did not arise to the level of a "serious medical need." Nurse Calderon, who inspected Gonzalez the morning after the incident, wrote that Gonzalez was "able to make a fist" with the injured hand. SAC, Ex. 20.[4] Further, she observed that there was no "swelling," "bruising," "discoloration," or "gross deformity." *Id.* She noted that plaintiff suffered a small laceration to the "2nd, 3rd, 4th digits" that was only "1/2 cm" in length. *Id.* Furthermore, the nurse observed that Plaintiff's circulation, sensation, and

---

[4] The Court may consider the exhibits attached to the complaint in determining whether the plaintiff can prove any set of facts to support their claim. However, "[i]f a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991).

motion (CSM)[5] were "WNL" (within normal limits). SAC, Ex. 20. In addition, Plaintiff's supporting declarations from plaintiff's cellmate Rocha and another inmate Silva state only that they saw deep cuts on plaintiff's right hand fingers. SAC, Exs. 56-59. *See also* SAC, Ex. 19 ("Officer Gusman working in the control clinch my right hand intentional cutting part of my fingers . . .").

Because Plaintiff's injuries appear to consist of cuts/lacerations approximately ½ cm in length, they do not rise to the level of a "serious medical need" sufficient to constitute a constitutional violation. *See MacFalling v. Nettleton*, No. CV1702399SVWAFM, 2017 WL 3498616, at *7 (C.D. Cal. Aug. 15, 2017) (cuts, abrasions, and swollen hands resulting from overly tight handcuffs did not rise to level of a significant injury); *Edwards v. California State Prison Los Angeles County*, 2012 WL 3023317, *11 (C.D. Cal. July 23, 2012) ("Because Plaintiff's own medical records establish his cuts did not constitute a serious medical need or pose a significant threat to his health, Plaintiff's medical indifference claim against c/o Jerid and the other defendants is incurably defective."); *Telles v. Stanislaus Cty. Sheriff's Dep't*, No. 1:10-CV-01911 AWI, 2011 WL 2036962, at *5 (E.D. Cal. May 24, 2011) (cuts and bruises not serious medical need where plaintiff did not allege the severity of those injuries); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 60-61 (N.D.N.Y. 2009) (holding that black eyes, bruising, red spots, kick marks, and open lacerations did not constitute a serious medical need); *Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (allegations of minor cuts and lacerations were not sufficiently serious); *Dawes v. Coughlin*, 159 F.3d 1346, 1998 WL 513944, at *1 (2d Cir. 1998)

---

[5] The Court takes judicial notice of medical terms and acronyms such as CSM, WNL, and PCP, which are readily verifiable on online dictionaries (e.g., medilexicon.com). Dictionary definitions are a proper subject for judicial notice. *See Wayne v. Leal,* 2009 WL 2406299, at *4 (S.D. Cal. Aug.4, 2000) (noting that a court may take judicial notice of facts "that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, such as an almanac, dictionary, calendar, or other similar source"); FED. R. EVID. 201(b)-c(1) (noting that the court "may take judicial notice on its own.")

(1.5″ laceration on elbow not sufficiently serious to support Eighth Amendment claim); *Davis v. Jones*, 936 F.2d 971, 972–73 (7th Cir. 1991) (one-inch laceration not serious medical need). Further, the fact that Nurse Calderon did not find Plaintiff's injuries worthy of any follow-up treatment and did not immediately refer Plaintiff to his PCP ("Primary Care Physician") weighs in favor of finding that his injuries were not a "serious medical need." *Cf. Bryant v. Thomas*, No. 09CV1334-WQH MDD, 2012 WL 5943654, at *8 (S.D. Cal. Sept. 7, 2012), *report and recommendation adopted*, No. 09CV1334 WQH-MDD, 2012 WL 5943547 (S.D. Cal. Nov. 27, 2012), *aff'd,* 669 F. App'x 476 (9th Cir. 2016) ("The existence of an injury that medical officials find worthy of treatment is sufficient to satisfy the objective component of the Eighth Amendment analysis."). Plaintiff's new allegations confirm that Nurse Calderon assessed Plaintiff's wounds to be minor. *See* SAC ¶ 62 (stating that Nurse Calderon gave him naproxen and told him "it will heal.").

The Court notes that Plaintiff continues to suffer at least some form of harm in his right hand. Exhibit 61, a medical progress note from Doctor Richard N. Gray, includes a statement from the Plaintiff that he "[does not have control of that hand and use of that hand that he had previously." Moreover, the doctor states that Plaintiff's right hand grip is decreased at IV/V, with strength 5/5, except for the right hand. The Court does not diminish the fact that Plaintiff appears to have suffered an injury, with at least some continuing harm. This order concludes only that Plaintiff has not met the constitutional standard of showing a "*serious* medical need."

The Court concludes that Plaintiff fails to state a deliberate indifference claim as to Defendant Rodrin and Calderon because he has not alleged a serious medical need.

### c. "Deliberate Indifference"

While the Court's conclusion that plaintiff's claim fails to allege a "serious medical need" is enough to dismiss this claim, the Court also addresses the nature of the responses

1  by Defendants Rodrin and Calderon to Plaintiff's medical need.

2  Plaintiff alleges that Defendant Rodrin, as well as Defendant Calderon engaged in deliberate indifference of his serious medical need. Dkt. No. 36; Dkt. No. 44. The Court will address the allegation against each Defendant in turn.

### 1. Defendant Rodrin

Deliberate indifference may be manifest by the intentional denial, delay or interference with a plaintiff's medical care. *See Estelle*, 429 U.S. at 104–05. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Mere negligence in the provision of medical care does not constitute a constitutional violation. *Estelle*, 429 U.S. at 105-06. Courts have found that delay in providing treatment for minor injuries does not arise to the level of deliberate indifference sufficient to state an Eighth Amendment violation. *See Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) ("we find no merit in [Plaintiff's] claims stemming from alleged delays in administering his pain medication, in treating his broken nose, and in providing him with a replacement crutch."); *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (no claim for deliberate medical indifference can be made for mere delay of surgery unless denial of medical care was harmful). When a prisoner alleges that delay of medical treatment constitutes deliberate indifference, the prisoner must show that the delay caused harm. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997). However, a finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary. *Id.*

Here, the Court once again concludes that Defendant Rodrin's behavior was at most negligent and does not amount to deliberate indifference. Rodrin allegedly denied Plaintiff's initial request for medical care shortly after the incident occurred. SAC ¶ 36.

Plaintiff showed Defendant Rodrin his cuts and Rodrin allegedly once again denied immediate health care services to Plaintiff. SAC ¶ 37. All told, any delay from Defendant Rodrin's inaction was at most negligent and cannot constitute deliberate indifference given that Plaintiff was seen by medical staff the next morning after he filled out a health services request form. *See Frost*, 152 F.3d at 1130; FAC ¶ 33; Ex. 20 (nurse inspection took place on April 7, 2015 at 8:00AM).[6]

Second, Plaintiff has not adequately alleged that any harm resulted from the delay in medical attention. Plaintiff does not allege—beyond a conclusory fashion—that Rodrin's failure to treat Plaintiff's condition exacerbated or worsened the injury. SAC ¶ 40 ("Defendant Rodrin deliberate indifference caused a agonizing pain that made Plaintiff suffer for the next 48 hours and making his condition worse."); *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (finding no deliberate indifference where plaintiff failed to allege that minor delays caused harm); *Amason v. Wedell*, 2014 WL 2987695 (E.D. Cal. July 1, 2014) ("Plaintiff did not identify the harm, if any, he sustained from the delay between 6:50 p.m. on September 20, 2009, and 9:00 a.m. on September 21, 2009."); *Martinez v. Villalon*, No. EDCV131064DMGDFM, 2017 WL 4174405, at *17 (C.D. Cal. May 19, 2017*), report and recommendation adopted,* No. EDCV1301064DMGDFM, 2017 WL 4156993 (C.D. Cal. Sept. 19, 2017) ("Plaintiff has not pointed to any evidence showing that the delay in his obtaining medical treatment, which totaled at most only a few hours, exacerbated his condition or caused him further significant harm."). *See also Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that mere delay of medical treatment, without more, is insufficient to state a claim of medical deliberate indifference). Thus, Plaintiff has failed

---

[6] Plaintiff appears to allege that he was actually seen by Nurse Calderon at a later time. *See* SAC ¶ 51 ("Plaintiff was not seen by medical staff the next morning after he filled out a HCSRF.") However, Plaintiff's medical records contradict this assertion and indicate that a check-up with Nurse Calderon took place the day after the incident on the morning of April 7, 2015 around 8:00 AM. *See* SAC, Ex. 20. Again, the Court considers Plaintiff's revised allegations that the medical report was fabricated to be contradicted by Plaintiff's reliance on this documents in his administrative appeals.

to allege facts sufficient to state an Eighth Amendment deliberate indifference claim against Defendant Rodrin.

## 2. Defendant Calderon

Deliberate indifference may also be determined based on the way in which prison medical providers administer care. *Hutchinson v. U.S.*, 838 F.2d 390, 394 (1988). Mere access to medical providers has no meaning if the medical staff is not competent to deal with the prisoners' problems. *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1252-53 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). Deliberate indifference can be shown if the medical staff is not competent to examine prisoners and diagnose illness, or if officials cannot refer prisoners to others who can provide proper treatment. *Hoptowit*, 682 F.2d at 1253-54. Where a choice exists between alternate courses of treatment exist, "a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances' and was chose 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). The indifference to a prisoner's medical needs must be substantial and mere indifference, negligence, or medical malpractice do not support this cause of action. *Broughton v. Cutter Laboratories*, 622 F.2d 458 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

Plaintiff argues that Defendant Calderon engaged was deliberately indifferent based on the manner in which she provided care. *See, e.g.*, Dkt. No. 48 at 7-9. Specifically, Plaintiff claims that Calderon was not competent to treat his injuries and, accordingly, Calderon should have referred Plaintiff to a specialist. *Id*. at 7-8. Plaintiff also contends that the care he received from Calderon was unacceptable under the circumstances because she failed to consider the internal injuries to his bones, tendons, and nerves due to the "blunt force impact by a heavy iron door." *Id*. at 8. However, plaintiff's allegations show that Calderon provided timely care by examining Plaintiff's external wounds, and by examining the internal mobility of his hand by asking Plaintiff

13

to make a fist, which he was able to do. *See* SAC ¶ 62. Calderon appears to have provided Plaintiff with medicine (naproxen) and told him that the wounds "will heal." SAC ¶ 62. To bolster the assertion that Calderon was not competent to treat his condition, Plaintiff alleges that Calderon's medical report contradicts itself. *See, e.g.*, Dkt. No. 48 at 9-10. Again, the Court reiterates that this is the same report Plaintiff previous relied upon to support his claim, and will disregard any allegation of fabrication of the report. *See, e.g.*, SAC Ex. 14. Further, Plaintiff does not allege that a specialist would have recommended or provided alternate, more acceptable care under the circumstances. As such, Nurse Calderon's actions demonstrate at most negligence which does not give rise to a claim of deliberate indifference. *See Siegrist v. Johnson*, No. 110CV01976LJOSABPC, 2016 WL 5109593, at *9 (E.D. Cal. Sept. 19, 2016) ("Plaintiff's allegations, at most, demonstrate potential negligence on the part of Defendant Nurse [ ] which does not give rise to a claim for deliberate indifference.").

Accordingly, the Court concludes that plaintiff has failed to allege facts sufficient to state an Eighth Amendment deliberate indifference claim against Defendants Rodrin and Calderon.

### d. Conspiracy Claim

Defendants move to dismiss Plaintiff's conspiracy claim. Plaintiff does not explicitly allege a conspiracy as a separate cause of action, but makes references to a conspiracy between the Defendants throughout his complaint. *See* SAC ¶¶ 5-8, 34, 63 [sic], 78-101. Where a complaint contains merely conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights, it must be dismissed. *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D. Cal. 1997), aff'd, 168 F.3d 498 (9th Cir. 1999). "A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil conspiracy, the plaintiff must show that the conspiring parties

14

"reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* Allegations of civil conspiracy must satisfy *Iqbal*. *Oceanside Organics v. Cty. of San Diego*, No. 15-CV-854 JLS (MDD), 2018 WL 1156431, at *5 (S.D. Cal. Mar. 5, 2018) A conspiracy is not a constitutional tort under § 1983, but may enlarge the pool of responsible defendants by demonstrating causal connections to the violation. *Id.*

To state a cause of action under 42 USC § 1985, a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).

Here, Plaintiff's conspiracy allegations appear limited to: (1) an allegation that Rodrin joined DeGuzman in a conspiracy when Rodrin did not immediately provide medical care and (2) an allegation that Nurse Calderon joined the conspiracy when she provided plaintiff medicine and told him "[i]t will heal." SAC ¶¶ 34, 62-63 [sic]. Plaintiff has not advanced specific claims of a conspiracy to deprive his civil rights. *See Buckley*, 36 F. Supp. 2d at 1221. In particular, there are no *detailed* allegations of any agreement between the members of the conspiracy. Moreover, plaintiff has not shown that he is a member of a protected group to allege any conspiracy claim under 42 U.S.C. § 1985. These speculative allegations are conclusory and do not include detailed allegations at the level of specificity required to find any conspiracy.

Accordingly, the Court will **GRANT** Defendant's Motion to Dismiss Plaintiff's conspiracy claim as to all defendants as Plaintiff's conspiracy claim is vague, speculative, and conclusory.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby **GRANTS** the Motion to Dismiss as to

(1) the second cause of action as to Defendant Rodrin and Defendant Calderon, and (2) any conspiracy claim alleged in the complaint. Dkt. Nos. 36, 44.  Accordingly, what remains in the SAC is Defendant's First Cause of Action against Defendant DeGuzman. *See* SAC ¶¶ 78-90.  The Court also **DENIES AS MOOT** Plaintiff's Motion for Order for Status Update (Dkt. No. 47).

**IT IS SO ORDERED**.

Dated:  April 12, 2018

Hon. Gonzalo P. Curiel
United States District Judge